\

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NATIONWIDE MUTUAL INSURANCE       :
COMPANY,                          :Civil Action No. 3:04-CV-612
                                  :
          Plaintiff,              :
                                  : (JUDGE CONABOY)
                 v.               :
                                  :
KENNETH L. ROTH,                  :
                                  :
     Defendant.                   :

_____

### MEMORANDUM

Here we consider five motions pending before the Court in the
above-captioned matter: 1) Motion to Compel Discovery Filed By
Defendant/Counter Claim [Plaintiff] Kenneth L. Roth, (Doc. 37); 2)
Motion for Summary Judgment of Plaintiff, Nationwide Mutual
Insurance Company, (Doc. 46); 3) Motion to Compel Depositions Filed
by Defendant/Counter Claim [Plaintiff] Kenneth L. Roth, (Doc. 49);
4) Motion for Protective Order of Plaintiff, Nationwide Mutual
Insurance Company, (Doc. 57); and 5) though not officially filed as
a motion, the Court has agreed to construe the Brief of Kenneth
Roth in Opposition to the Motion for Summary Judgment of Nationwide
Mutual Insurance Company, (Doc. 52), as a cross-motion for summary
judgment.  The underlying issue in this declaratory judgment action
is whether Plaintiff/Counter-Claim Defendant Nationwide Mutual
Insurance Company ("Plaintiff") properly denied underinsured
motorist coverage under a policy of insurance Defendant/Counter-

1

Claim Plaintiff Roth ("Defendant") had with Plaintiff insuring three vehicles when he was injured in an accident while riding his motorcycle which was insured by Plaintiff under a separate insurance policy.  For the reasons discussed below, we conclude that Plaintiff properly denied coverage.  Therefore, we grant the Motion for Summary Judgment of Plaintiff, Nationwide Mutual Insurance Company, (Doc. 46), deny Defendant's cross-motion, (Doc. 52), and deem the remaining pending motions moot.

## I. Background

This declaratory judgment action was filed by Plaintiff in order to clarify the Underinsured Motorists coverage due Defendant. (Doc. 1.)  Defendant was injured while riding his Honda motorcycle on June 22, 2002, when he was struck by a vehicle driven by Taza Nelson.  (*Id.*)  As a result of this accident, Defendant filed a claim for Underinsured Motorists Benefits with Plaintiff, the company which insured his motorcycle and three other vehicles under a separate policy.  (*Id.*)  The policy insuring the motorcycle provided for $50,000 of Underinsured Motorists Coverage and the other vehicle policy provided $150,000.  (*Id.*)  Plaintiff acknowledges that Defendant was severely injured in the accident, (*id.*), and has paid Defendant the $50,000 of Underinsured Motorists Coverage provided in the motorcycle policy.  (Doc. 80-1 at 18.)

In Plaintiff's Complaint and subsequent filings, it is averred that Plaintiff does not owe Defendant any additional Underinsured

2

Motorists coverage because the "household exclusion" clause in the policy covering the three vehicles precludes further recovery. (*See*, *e.g.*, Doc. 1 ¶ 16.)  Defendant disagrees with this position, asserting he is entitled to Underinsured Motorists benefits under the three-vehicle policy because he did not waive stacking on that policy.  (Doc. 52.)  Defendant maintains that Plaintiff has not presented a valid public policy basis to enforce the household exclusion and, under the circumstances of this case, the household exclusion in the policy cannot be enforced because it is in conflict with § 1738 of the Pennsylvania Motor Financial Responsibility Law which allows stacking.  (*See*, *e.g.*, *id.* at 7-14.)

After Plaintiff filed this action on March 23, 2004, the Court issued an Order setting out the procedure used in declaratory judgment actions and establishing an appropriate briefing and hearing schedule.  (Doc. 2.)  The hearing originally scheduled in this matter for June 9, 2004, (*id.*), was continued several times at the request of the parties, (*see*, *e.g.*, Docs. 18, 21, 30,).  Eventually, a hearing was held on March 22, 2006.

As a result of the hearing, the parties were directed to file supplemental briefs pertaining to all pending motions on or before March 31, 2006, (Doc. 69), and the parties did so, (Docs. 70, 71).

On April 20, 2006, the Court issued an Order staying the case and all pending motions because the Pennsylvania Supreme Court's

3

decision in the case of *Craley v. State Farm Fire and Casualty Co.*
was imminent and, given similar issues, the outcome of *Craley* could
be dispositive for our case.  Following the Pennsylvania Supreme
Court's decision on April 21, 2006 - *Craley v. State Farm Fire and
Casualty Co.*, 895 A.2d 530 (Pa. 2006) - at the request of
Defendant's counsel, the Court directed the parties to submit
briefs addressing the impact of the *Craley* decision on the pending
case on or before May 12, 2006, (Doc. 74).  After receiving these
briefs, (Docs. 75, 76), the Court ordered further briefing of
specific issues, (Doc. 77), and the parties submitted the required
supplemental briefs, (Docs. 80, 81).

After reviewing the parties filings, we concluded that the
only issue to be decided in the summary judgment motions is whether
the household exclusion is applicable.  We determined that a
supplemental hearing would be beneficial and scheduled a hearing
for August 10, 2006.  (Doc. 83.)  This hearing was continued at
Plaintiff's request and eventually was held on October 11, 2006.

## II. Discussion

We begin our discussion with consideration of the parties'
cross-motions for summary judgment because the resolution of these
motions affects the disposition of the remaining motions.

### A.   *Cross-Motions for Summary Judgment*

#### 1.   *Summary Judgment Standard*

The standard for granting summary judgment in a declaratory

4

judgment action is the same as for any other type of relief. *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Marketing Board,* 298 F.3d 201, 210 n.12 (3d Cir. 2002).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d Cir. 1997)(citing Fed. R. Civ. P. 56(c)).  "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the  parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case.  *Id.* at 248; *Levendos v. Stern Entertainment Inc.*, 860 F.2d 1227, 1233 (3d Cir. 1988).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 257.  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation

omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Celotex*, 477 U.S. at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

The summary judgment standard does not change when the parties have filed cross-motions for summary judgment. *Applemans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). When confronted with cross-motions for summary judgment, as in this case, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard."

6

*Marciniak v. Prudential Financial Ins. Co. of America*, No. 05-4456, 2006 WL 1697010, at *3 (3d Cir. June 21, 2006) (citations omitted) (not precedential).  If review of cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.  *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

### 2. Plaintiff's Motion for Summary Judgment

The basis for Plaintiff's motion is the assertion that the household exclusion clause found in Defendant's policy which covered the three vehicles and allowed stacking is valid and, therefore, excludes underinsured motorists coverage in the situation presented here.  In Plaintiff's words, "a single issue exists.  The issue is as follows: Is the household exclusion enforceable where the same insurer issues multiple policies to the same named insured?"  (Doc. 70 at 6.)

Stacking, the practice which allows recovery under more than one policy and/or for more than one vehicle, is addressed in the Pennsylvania Motor Vehicle Responsibility Law, 75 Pa. C.S. §. 1701 et seq. ("MVFRL").   Section 1738 of the law provides for "[s]tacking of uninsured and underinsured benefits and the option to waive":

> **(a) Limit for each vehicle.--**When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for

7

> uninsured or underinsured coverage shall
> apply separately to each vehicle so insured.
> The limits of coverages available under this
> subchapter for an insured shall be the sum of
> the limits for each motor vehicle as to which
> the injured person is an insured.
>
> **(b) Waiver.--**Notwithstanding the provisions
> of subsection (a), a named insured may waive
> coverage providing stacking of uninsured or
> underinsured coverages in which case the
> limits of coverage available under the policy
> for an insured shall be the stated limits for
> the motor vehicle as to which the injured
> person is an insured.
>
> **(c) More than one vehicle.--**Each named
> insured purchasing uninsured or underinsured
> motorist coverage for more than one vehicle
> under a policy shall be provided the
> opportunity to waive the stacked limits of
> coverage and instead purchase coverage as
> described in subsection (b). The premiums for
> an insured who exercises such waiver shall be
> reduced to reflect the different cost of such
> coverage.

75 Pa. C.S. § 1735. Subsection (d) of the provision sets out the

procedure and form to be used for waiver. 75 Pa. C.S. § 1735(d).

Plaintiff does not dispute that Defendant's policy of

insurance at issue in this case, the policy covering the three

vehicles, allows for stacking. (*See*, *e.g.*, Doc. 80-1 at 16-17.)

Plaintiff further recognizes that, because Defendant did not waive

inter-policy stacking under the personal auto policy, under a

stacking analysis alone, Defendant would be entitled to the

additional benefits under the auto policy which he currently seeks.

(*Id.* at 17.) However, as noted above, Plaintiff contends that the

8

household exclusion clause in the policy prohibits stacking in the circumstances of this case. (*See*, *e.g.*, *id.* at 18.)

The household exclusion clause contained in Defendant's policy states that coverage under the policy does not relate to "[b]odily injury suffered while occupying a motor vehicle owned by you or a relative but not insured for Underinsured Motorists Coverage under this policy; nor to bodily injury from being hit by any such motor vehicle." (Doc. 1 ¶ 16.)

Here it is undisputed that Defendant was injured while occupying a motor vehicle (motorcycle) owned by himself but not insured for Underinsured Motorists Coverage under the policy at issue. As support for its position that the exclusion is enforceable, Plaintiff maintains that the validity of the household exclusion has been addressed by the Pennsylvania Appellate Courts on many occasions and, each time, the exclusion was upheld and found enforceable. (Doc. 75 at 2 (citations omitted).)

Defendant agrees that, on its face, the household exclusion clause considered in isolation prevents recovery in the circumstances of this case, but maintains that the household exclusion clause should not be applied to the facts of this case because such application would conflict with § 1738 and is repugnant to public policy. (*See*, *e.g.*, Doc. 52 at 13; Doc. 71-1 at 4.) "Roth submits that it would be unconscionable . . . to allow an insurance company to charge a premium surcharge for the

9

right to stack inter-policy and then deprive the insured of what he paid for by invoking the 'household exclusion.'" (Doc. 76-1 at 12; *see also* Doc. 71-1 at 3.)  Defendant concludes: "As a matter of law, this Court should find that Nationwide's 'household exclusion' is contrary and repugnant to 1738(a) and, therefore, 'trumped' by the statutory mandate." (Doc. 71-1 at 3.)

At oral argument, Defendant's attorney reiterated that he "acknowledge[s] there is case law from Pennsylvania as well as Federal Courts interpreting the applications of Pennsylvania law which indicates in many, many decisions that the household exclusion clause is valid, that does not mean that [sic] household exclusion clause in its application is valid." (Hearing Transcript, 17, Oct. 11, 2006.)  Defendant identifies the distinguishing feature in this case as the fact that the insurer and insured are the same on both the policy under which the insured recovered underinsured motorists benefits (the motorcycle policy) and the policy under which he now seeks additional coverage (the three vehicle policy).  (Oral Argument generally; *see also* Doc. 81-1 at 3.)

Plaintiff maintains that this factual distinction is without legal significance: "In fact, legal precedent mandates the opposite conclusion." (Doc. 80-1 at 18.)  Plaintiff posits that the exclusion has been found to be presumptively valid.  (Doc. 80-1 at 19 (citing *Eichelman v. Nationwide*, 711 A.2d 1006 (Pa. 1998);

10

*Nationwide Mutual Insurance Co. v. Riley*, 352 F.3d 804 (3d Cir. 2004)).)   In addition to the presumptive validity of the household exclusion clause, Plaintiff adds that enforceability is also based on the premium charged for the risks insured: "The risks accepted in underwriting the policy specifically contemplated the elimination of exposure otherwise covered except for the household exclusion."  (Doc. 80-1 at 19.)

Based on both caselaw and contract principles, we are persuaded that the exclusion in this case is enforceable.  We disagree with Defendant's conclusion that the exclusion is "repugnant to § 1738 of the MVFRL and the Supreme Court's decision in *Craley*" because it takes away something which the Pennsylvania legislature has statutorily granted.  (Doc. 81-1 at 6.)  First, we find Defendant's reliance on *Craley* misplaced.  The Pennsylvania Supreme Court's recent decision did not address the household exclusion.  However, in his concurring opinion, Justice Eakin stated that he believed the household exclusion clause in the policy at issue precluded Craley's recovery: it was similar to the clause previously held enforceable by the Pennsylvania Supreme Court and there was "no reason, public policy or otherwise, to not enforce the exclusion."  *Craley*, 895 A.2d at 544 (Eakin, J., concurring).  The exclusion in *Craley* is similar to the exclusion here.  895 A.2d 534.

Since the *Craley* decision, the Pennsylvania Supreme Court

11

denied the Petition for Allowance of Appeal in a case factually similar to the case at bar. *Alderson v. Nationwide*, No. 520 WAL 2005, 2006 WL 2669345 (Pa. Sept. 18, 2006). In *Alderson*, the two policies had the same named insured and insurer and a household exclusion clause identical to that in Defendant's policy. *Alderson v. Nationwide*, 884 A.2d 288, 289 (Pa. Super. 2005). When the plaintiff was injured in a motorcycle accident, he recovered underinsured motorists coverage under the motorcycle policy and sought additional recovery under Nationwide policies that covered other vehicles in the household. *Id.* The Superior Court noted the household exclusion "has been upheld in several recent cases notwithstanding express arguments that it violates public policy," *id.* at 290, and held that the exclusion was enforceable under the facts of the case. *Id.*

Although we recognize that the Pennsylvania Supreme Court's decision to deny the Petition for Allowance of Appeal in *Alderson* cannot be construed as affirming the Superior Court's decision, we find the denial instructive - the Pennsylvania Supreme Court did not reject the applicability of a household exclusion clause in a case with the same clause as that in Defendant's policy and under an almost identical factual situation.

Regarding Defendant's asserted repugnance of the exclusion to § 1738, not only has no court found this to be the case, but, as quoted above, *Alderson* specifically noted that public policy

arguments similar to Defendant's have been rejected.   884 A.2d at 290.   In addition to the guidance provided by the Pennsylvania Superior Court, we respond to Defendant's public policy argument with the observation that there is an important distinction between paying for something you cannot receive (e.g., paying for stacking in a policy which contains an exclusion of *all* stacking) and paying for something that all parties know is *limited* by the terms of the policy (e.g., the situation here where the household exclusion clause limits stacking only in certain situations and does not otherwise affect the insured's right to stack).   The latter is contractually valid and not inconsistent with public policy.[1]

The legislature passed concepts on coverage in the MVFRL. It is a legitimate endeavor for anyone, especially carriers, to determine to what extent the legislation affects them and to limit any effect that legislation may have on policies they may issue.

---

[1]   At oral argument held on October 11, 2006, Defense Counsel argued that if the household exclusion clause is a way of limiting stacking, it must comport with the waiver requirements of § 1738.
No court considering the household exclusion has found any such requirement.  As discussed previously, *Alderson* recently looked at the household exclusion clause in an almost identical factual situation and upheld it without qualification – the waiver requirements of § 1738 are not imputed to the household exclusion clause.  *Alderson*, 884 A.2d 288.
The law regularly draws a line between reduction of benefits and elimination or rejection of benefits – statutory requirements attendant to the latter are not necessarily imputed to the former. *See, e.g., Lewis v. Erie Insurance Exchange*, 793 S.2d 143, 147, 148 n.6, 155 (Pa. 2002).  Based on this general principle and on caselaw addressing the intersection of the MVFRL and the household exclusion clause, we find Defendant's argument without merit.

One of the methods carriers have designed to limit exposure is the household exclusion device.  As noted previously, the household exclusion has been upheld by all appellate courts in Pennsylvania that have looked at it.

In this case, Defendant makes a request that would essentially have us find the household exclusion clause is purely a device to frustrate the purpose of the MVFRL to consumers and insureds like Defendant.  There is nothing in the record before us that would have us believe that the carrier did anything other than employ a legitimate method of limiting its exposure.

In any contract of insurance, there are risks on both sides and each party evaluates those risks from their own perspective. Carriers want to be sure that premiums relate to the risk insured. An insured has an absolute right to purchase greater or lesser coverage based on individual economic decisions.  From Defendant's perspective, he evaluated the risk that he could be injured on the motorcycle and purchased coverage he deemed sufficient to cover damages.

Likewise, under his automobile policy, the policy under which Defendant now seeks additional coverage, Defendant agreed to specific coverage in contracting with Nationwide for a policy of insurance.  Defendant's separate automobile policy included the household exclusion which eliminates stacking in the factual situation presented here.  The exclusion is a clear and unambiguous

14

contract provision to which a court must give plain meaning "unless to do so would be contrary to clearly established public policy." *Alderson*, 884 A.2d at 290 (citing *Eichelman v. Nationwide Ins. Co.*, 711 A.2d 1006 (Pa. 1998)).   Defendant has presented no clearly established public policy that would prevent the enforceability of the unambiguous household exclusion clause in his contract of insurance.   Therefore, Defendant is not entitled to the additional coverage he seeks.

Because of the basis upon which we find the household exclusion clause enforceable, the additional discovery requested by Defendant would not assist the Court in deciding the issue before us.   Defendant has consistently maintained that, if the Court does not grant summary judgment in his favor, further discovery is required for the Court to properly consider the issues.

Specifically, Defendant avers that additional discovery is needed because of the following: Plaintiff unilaterally chose to insure his motorcycle on a separate policy for the sole reason of limiting his statutory right to stack the underinsured motorist protection on all his insured vehicles; Plaintiff generally structures its policies to prevent stacking; and Defendant did not receive a reduced premium for either the waiver of stacking in his motorcycle policy or the household exclusion clause in either policy. (*See*, *e.g.*, Doc. 52 at 6, 12, 14; Doc. 71-1 at 14, Doc. 81-1 at 18.)   Defendant explains: "All [of the outstanding requests for discovery] seek[] information regarding the creation,

implementation and enforcement of policies that limit and preclude an insured's right to collect uninsured or underinsured motorist benefits based on a household exclusion clause." (Doc. 61-1 at 9.) As the rationale for the need for the requested discovery, Defendant states that he "seeks this information to better allow the Court to address Roth's claim that the household exclusion is in conflict with and repugnant to the Pennsylvania Motor Vehicle Responsibility Law." (*Id.*)

Because the Court determined that the only policy in question here is the personal automobile policy, the premium paid for the motorcycle policy is not at issue. (Doc. 83 at 4.) Further, the Court determined the only issue remaining to be decided at this stage of the proceedings is whether the household exclusion clause in the personal auto policy is enforceable. (*Id.*) Therefore, our previously expressed concerns with premiums were distilled to the questions of whether an insured gets any benefit from his decision not to waive stacking in light of the admittedly higher premium and the presence of the household exclusion clause, and whether the premium charged reflects the inclusion of the household exclusion clause. (*See*, *e.g.*, Doc. 83 at 4, 5 n.1.)

As discussed previously, we find that an insured gets a benefit to the bargain when he does not waive stacking and his policy contains a household exclusion clause: he can stack coverage in all but the situations set out in the clause.

Regarding the premium considerations for the household exclusion clause, Plaintiff maintains that the premium paid reflects the limitation of stacking inherent in the inclusion of the household exclusion clause in all of its policies - if not for the clause, Nationwide's risk exposure would be greater and, therefore, the premium would be higher. (*See*, *e.g.*, Doc. 80-1 at 23-25, Oral Argument generally.) Plaintiff further maintains that it cannot identify precisely what the higher premium would be because risk analysis is done prospectively: with the household exclusion clause historically a clause in every personal vehicle policy, no data exists to determine a dollar figure difference in exposure between policies with and without the household exclusion. (*Id.*)

The Court is satisfied that, because Plaintiff does not sell personal vehicle policies without the household exclusion, logically the company cannot provide a figure of what the premium is absent the clause - the figure does not exist because such a policy does not exist. Similarly, as discussed previously, an insurer's method of limiting exposure is acceptable if it functions within the law, and no court has determined that the household exclusion clause is unlawful.

Finally, as to Plaintiff's unilateral decision to insure the motorcycle on a separate policy, we note Defendant purchased the personal auto and motorcycle policies at different times, the

policies had separate premiums, and the premiums were billed separately. (Doc. 92.) Therefore, although Defendant may not have chosen the two policy arrangement, he was aware that the motorcycle was insured separately.

Plaintiff admits that an insured does not have the option of insuring a motorcycle on the same policy as automobiles because of the higher risk of injury involved with motorcycles. This elimination of choice does not change our conclusion that Plaintiff has acted lawfully. As discussed above, an insurer has the right to assess and reduce risks in a lawful manner. The record before us does not reflect that Plaintiff's action in separately insuring the motorcycle was unlawful.

Having considered Defendant's request for further discovery, based on the foregoing discussion and our rationale for finding the household exclusion clause enforceable, we conclude that further discovery is not necessary nor would it be helpful in deciding the issue before us.

Therefore, we grant the Motion for Summary Judgment of Plaintiff, Nationwide Mutual Insurance Company, (Doc. 46).

### 3. *Defendant's Motion for Summary Judgment*

As noted above, at the request of Defendant, we construe the Brief of Kenneth Roth in Opposition to the Motion for Summary Judgment of Nationwide Mutual Insurance Company, (Doc. 52), as a cross-motion for summary judgment. Based on the analysis set out

above in our discussion of Plaintiff's motion, we deny Defendant's cross-motion for summary judgment, (Doc. 52).

## C.   *OTHER PENDING MOTIONS*

The remaining pending motions - Motion to Compel Discovery Filed By Defendant/Counter Claim [Plaintiff] Kenneth L. Roth, (Doc. 37), Motion to Compel Depositions Filed by Defendant/Counter Claim [Plaintiff] Kenneth L. Roth, (Doc. 49) and Motion for Protective Order of Plaintiff, Nationwide Mutual Insurance Company, (Doc. 57) - are deemed moot based on the grant of summary judgment for Plaintiff.

### III. Conclusion

For the reasons set out above, Plaintiff's summary judgment motion is GRANTED, Defendant's cross-motion for summary judgment, (Doc. 52), is DENIED.   The remaining pending motions are DEEMED MOOT.   An appropriate Order follows.

S/Richard P. Conaboy
                    RICHARD P. CONABOY
                    United States District Judge

DATED: October 26, 2006 _____

19

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NATIONWIDE MUTUAL INSURANCE    :
COMPANY,                       :Civil Action No. 3:04-CV-612
                               :
          Plaintiff,           :
                               : (JUDGE CONABOY)
                  v.           :
                               :
KENNETH L. ROTH,               :
                               :
     Defendant.                :

_____

**ORDER**

AND NOW, THIS 26th DAY OF OCTOBER 2006, FOR THE REASONS SET

FORTH IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

1.    The Motion for Summary Judgment of Plaintiff, Nationwide

      Mutual Insurance Company, (Doc. 46), is GRANTED;

2.    Defendant's cross-motion for summary judgment as the

      Court agreed to construe the Brief of Kenneth Roth in

      Opposition to the Motion for Summary Judgment of

      Nationwide Mutual Insurance Company, (Doc. 52), is

      DENIED;

3.    The Motion to Compel Discovery Filed By Defendant/Counter

      Claim [Plaintiff] Kenneth L. Roth, (Doc. 37), is DEEMED

      MOOT;

4.    The Motion to Compel Depositions Filed by

      Defendant/Counter Claim [Plaintiff] Kenneth L. Roth,

      (Doc. 49), is DEEMED MOOT;

20

5.    The Motion for Protective Order of Plaintiff, Nationwide
      Mutual Insurance Company, (Doc. 57), is DEEMED MOOT;

6.    The Clerk of Court is directed to close this case.

<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge